MICHAEL FAY AND NELLIE C. BLACKER, EXECUTORS OF THE ESTATE OF ROBERT ROE BLACKER, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 74202. Promulgated June 3, 1936.

*Claude I. Parker, Esq.*, for the petitioners.
*T. G. Histon, Esq.*, for the respondent.

664

TURNER: The petitioners contend that the agreement between the decedent and the Institute was an endowment or annuity contract, and, under the provisions of section 22 (b) (2) of the Revenue Act of 1928, the amounts paid to the decedent during the taxable year were excluded from gross income. The respondent takes the position, on the other hand, that a trust was created by the decedent through the transfer of the securities to the Institute as trustee and that the income, being reserved in the grantor, is taxable to him.

The petitioners rely on *Continental Illinois Bank & Trust Co.* v. *Blair*, 45 Fed. (2d) 345, in which case the facts are very similar to the facts in the instant case. There the court reversed the Board and held that the various transfers of securities amounted to the purchase of an annuity or the creation of an endowment and that the grantor derived no income therefrom until the amount received equaled the value of the securities at the time of the transfer. While, as is pointed out by the respondent, the terms of the instrument in the instant case refer to the transfer of securities as the transfer to a trust, and the instruments involved in *Continental Illinois Bank & Trust Co.* v. *Blair, supra,* use language which does not of itself imply the creation of a trust, we see no substantial distinction between the two cases on the facts. In each instance the securities were transferred to the particular organization subject to a provision that the grantee should receive the income therefrom and pay it over to the grantor during his life and then to certain other individuals during their lives; and it was further provided in each case that after the death of the individuals so designated the income therefrom should be used in furthering the purposes of the institutions to which the securities had been transferred. It seems thus apparent that *Continental Illinois Bank & Trust Co.* v. *Blair, supra,* supports the petitioners' contentions. We have carefully examined the decision and the reasoning of the court therein, but for reasons set forth below are unable to follow that decision in this proceeding.

A substantially similar transaction was before the United States Circuit Court of Appeals for the Eighth Circuit in *Bettendorf* v. *Commissioner*, 49 Fed. (2d) 173, and in our opinion the reasoning of the court in that case clearly and accurately construes the transaction which took place here. There a transfer of securities was made by a mother to her son. By the terms of the transfer instrument the son was to pay the income derived from these securities to the grantor and her husband during their lives. An effort was made to include the income from these securities in the income of the grantee under the same reasoning that was used by the court in *Continental Illinois Bank & Trust Co.* v. *Blair*, *supra*. The court held that the grantor had not purchased an annuity, saying, "In the instant case, at the time of the execution of this contract, Catherine Bettendorf was the absolute owner of these securities and, as an incident to such ownership, she was entitled to all the earnings or dividends derived therefrom. By her contract, however, she transferred the legal title to the stock, but by the terms of this same contract she retained and reserved to herself the right to the income during her life. The income was therefore at no time that of the petitioner, because by the very contract under which he held the legal title he was bound to account to the donor for the income. The contract required that the petitioner account only for such income as accrued, and not for a specified sum. He was not chargeable personally with the income for the stock, except as and when it should be received by him, and hence the contract did not create an annuity in favor of Mrs. Bettendorf."

The reasoning of the court in *Bettendorf* v. *Commissioner*, *supra*, is equally applicable in this case. The grantor owned the securities transferred, and, as an incident of the ownership of those securities, was entitled to all the earnings or dividends derived therefrom. A transfer of the securities was made to the Institute for certain designated purposes, but the grantor never at any time parted with the right to receive the income. It is true that the securities were transferred to the name of the Institute and the income from them was to be collected by it, but by the terms of the contract all of this income, after the payment of certain charges incident to its collection, was to be paid over to the grantor during the period of his life. After his death the income was to be used for certain purposes specified by the grantor in the agreement, but the grantor never at any time parted with the right to receive such income as might be derived from the securities during his lifetime. The income as such was reserved by the grantor and by the terms of the instrument the Institute was merely the conduit through which it passed.

In *Continental Illinois Bank & Trust Co.* v. *Blair*, *supra*, the court, in support of its holding that the grantor had purchased an

annuity, cited *Warner* v. *Walsh*, 15 Fed. (2d) 367; *United States* v. *Bolster*, 26 Fed. (2d) 760; and *Allen* v. *Brandeis*, 29 Fed. (2d) 363. The reasoning in those cases, however, was specifically rejected by the Supreme Court in *Helvering* v. *Butterworth*, 290 U. S. 365. In that case the Supreme Court held that an election by a widow to accept income from the residue of her husband's estate as provided by will rather than to claim the rights granted her by the state laws was in no proper sense the purchase of an annuity. Cf. *Burnet* v. *Whitehouse*, 283 U. S. 148; *Helvering* v. *Pardee*, 290 U. S. 365; and *Irwin* v. *Gavit*, 268 U. S. 161.

The action of the respondent in including in the income of the decedent the amounts received from the securities transferred to the Institute is sustained. From this holding, it follows that a recomputation of the deduction in respect of charitable contributions is necessary.

*Decision will be entered under Rule 50.*