ESTATE OF DOUGLAS HENRY, DECEASED, THIRD NATIONAL BANK, ET AL., CO-EXECUTORS, AND KATHRYN C. HENRY, SURVIVING WIFE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

KATHRYN C. HENRY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 2926–75, 2927–75.    Filed February 6, 1978.

*Harlan Dodson, Harlan Dodson III,* and *Jack H. Putnam, Jr.,* for the petitioners.
*John B. Harper,* for the respondent.

FEATHERSTON, *Judge:* Respondent determined a deficiency in the amount of $647,934.63 in petitioners' joint Federal income tax for 1971. Alternatively, respondent determined a deficiency in the amount of $699,640.83 in petitioner Kathryn C. Henry's Federal income tax for 1972.

The principal issue for decision is whether petitioner Kathryn C. Henry realized net income as a result of the payment of gift taxes by the trusts to which she had made gifts of certain securities. In the event that income was so realized, we must deal with a second issue as to whether such income was realized in 1971, the year in which the gifts were made, or in 1972, the year in which the gift taxes were paid by the donee. In order to protect his position, respondent has determined deficiencies with respect to the same alleged income in both such years; however, he concedes that the tax will be due only with respect to one of the 2 years, as may be determined herein.

FINDINGS OF FACT

Petitioner Kathryn C. Henry (hereinafter petitioner) is the

surviving wife of Douglas Henry, who died on September 3, 1971. Third National Bank in Nashville (Third National) is a Tennessee corporation with offices in Nashville.

Petitioner and Third National were coexecutors under the will of Douglas Henry. Additional executors of the estate of Douglas Henry (hereinafter the estate) were Kathryn Craig Henry, Margaret Henry Joyce, and Douglas Selph Henry, Jr. Petitioner and each of the individual coexecutors resided in Nashville, Tenn., on the date the petition herein was filed.

The estate and petitioner, as surviving spouse, filed a joint Federal income tax return for 1971 with the Director, Internal Revenue Center, Memphis, Tenn. Petitioner filed an individual Federal income tax return for 1972 with the Director, Internal Revenue Center, Memphis, Tenn. During the years in question, petitioner and the estate were cash basis taxpayers.

During 1971 Thomas Cooper (Cooper), an employee of Third National with whom petitioner consulted concerning investments, suggested to petitioner that she consider making certain gifts. Cooper and petitioner consulted with Richard Holton (Holton), an officer in Third National's tax department, concerning the technical tax aspects of the proposed gifts. Holton and Cooper also called in petitioner's personal attorney, Harlan Dodson (Dodson), to discuss the situation.

Among the matters discussed were the possible income tax consequences of a gift made with the requirement that the donee pay all applicable Federal and State gift taxes. Dodson, an attorney with considerable experience and expertise in estate planning and taxation, researched this question thoroughly and concluded that it had been clearly established in several court cases[1] that such an arrangement did not give rise to income tax consequences to the donor. Accordingly, Dodson advised petitioner to proceed with the proposed gifts. If Dodson had believed that the proposed gift arrangement would have resulted in income tax liability to petitioner, he would not have advised her to proceed in such a manner, and she would not have done so.

Based upon the advice of Cooper, Holton, and Dodson,

---

[1]The cases relied upon, which represented the position of the Sixth Circuit Court of Appeals, the circuit in which petitioner resided, and the most current case law on the subject at the time (late 1971), included the following: *Krause v. Commissioner*, 56 T.C. 1242 (1971), appeal dismissed (nolle pros) (6th Cir. June 27, 1972); *Turner v. Commissioner*, 49 T.C. 356 (1968), affd. per curiam 410 F.2d 752 (6th Cir. 1969); *Estate of Morgan v. Commissioner*, 37 T.C. 981 (1962), affd. 316 F.2d 238 (6th Cir. 1963), cert. denied 375 U.S. 825 (1963).

petitioner on December 20, 1971, created eight irrevocable trusts for the benefit of her eight grandchildren. The trust instruments, which were identical as to all provisions pertinent to the issues in this case, named Third National as trustee and contained the following provisions concerning gift taxes:

### ARTICLE III. TAXES

A. Trustee shall promptly pay all federal and state gift taxes which shall arise out of or be attributable to the transfer by this trust agreement.

B. In order to provide funds with which to pay such taxes, the trustee in its sole and absolute discretion may borrow sufficient funds for such purposes from such sources, including itself, as it may deem proper and to pledge or charge any or all of the corpus or income of this trust as security for any such loan.

The foregoing provisions were modeled in part upon certain language in the trust instrument involved in *Krause v. Commissioner*, 56 T.C. 1242, 1243 (1971), appeal dismissed (nolle pros) (6th Cir. June 27, 1972). That case had been decided on August 31, 1971, and had been relied upon by Dodson as the then most recent court decision. It was consistent with prior decisions in the Sixth Circuit and confirmed his conclusion that such an arrangement for the payment of gift taxes would not result in income to petitioner.

Petitioner transferred the following shares of stock to the eight trusts on December 22, 1971:

### Shares transferred

| Trust | NLT Corp. | Third National Bank |
|---|---|---|
| A | 29,352 | 3,450 |
| B | 29,352 | 3,450 |
| C | 19,568 | 2,300 |
| D | 19,568 | 2,300 |
| E | 19,568 | 2,300 |
| F | 19,568 | 2,300 |
| G | 19,568 | 2,300 |
| H | 19,568 | 2,300 |
| Total | 176,112 | 20,700 |

Petitioner's basis in the transferred shares of stock was $114,940.97. On December 20, 1971, the fair market value of all the shares of stock transferred to the eight trusts was

$6,682,572. Neither petitioner nor the trustees intended the transfer, in whole or in part, to be a sale of the stock.

On January 31, 1972, the eight trusts each borrowed sufficient funds from Third National to pay all Federal gift tax liabilities for the fourth quarter of 1971 and Tennessee State gift taxes for 1971. Trust assets (shares of the stock received from petitioner) were pledged as security for the loans. On the same date the trustee paid a total of $2,085,967.26 in Federal and State gift tax liabilities.

In 1972 all of the trusts began making payments on the January 31, 1972, loans from Third National. By 1976 six of the trusts had paid their loans in full. The loans to the other two trusts had not been paid in full as of the date of trial. Virtually all repayments of the Third National loans were made from the net proceeds from sales of the securities received by the trusts in 1971, such proceeds consisting of both income and corpus.

Petitioner did not report any income in connection with her transfers of NLT Corp. and Third National stock in either her 1971 or 1972 Federal income tax returns. Respondent determined that such transfers resulted in a taxable gain to petitioner in 1972, or alternatively in 1971, computed as follows:

Amount realized (gift tax liabilities
assumed and paid by the trusts) ................... $2,085,967.26
Less: basis in stock transferred ........................ 114,940.97
Long term capital gain .................................. 1,971,026.29
Less: sec. 1202[2] deduction ............................... 985,513.15
Unreported taxable income ............................... 985,513.14

Based upon the foregoing determination of additional income, respondent computed income tax deficiencies of $647,934.63 for 1971 and $699,640.83 for 1972. These deficiencies included a minimum tax in each year; however, respondent has now stipulated that such minimum tax is not applicable, and that the deficiencies now asserted are $637,264.79 for 1971 and $685,949.81 for 1972. Respondent has also conceded that the additional net income, determined as shown above, will not be subject to tax in both 1971 and 1972, but only in the proper year as may be determined herein.

---

[2]All section references are to the Internal Revenue Code of 1954, as in effect during the years in issue, unless otherwise noted.

## OPINION

In this case we must once again grapple with the issue of the income tax consequences to a donor of appreciated property where the gift is conditioned upon the donee's payment of the gift tax resulting from the transfer. The basic facts are not disputed and are simply stated. Petitioner made gifts of securities which had a fair market value substantially in excess of her basis. One condition of the gifts was that the donees pay all applicable gift taxes, which they eventually did. The gift taxes paid exceeded in total amount the donor's basis in the securities transferred, but neither petitioner nor the trustees intended the transaction to be a sale in whole or in part.

Respondent characterizes the transaction as in part a sale and in part a gift, under the following rationale: Since the gift taxes on the transfer were the legal obligation of the donor,[3] the donee's payment of the donor's tax obligation constituted income to the donor. The gift tax payment was, in effect, an "amount realized" as consideration for the transfer of the securities. To the extent that the fair market value of the securities transferred exceeded the amount deemed consideration (i.e., the gift taxes paid), such excess value, and only such excess value, was a gift. Petitioner, however, disputes this view of the transaction, maintaining that she merely made a "net gift" of the difference between the value of the securities and the applicable gift taxes, and that such a transaction, as a pure gift, has no income tax consequences.

The issue of the income tax consequences to the donor arising from payment of gift tax by the donee first arose in a series of cases involving gifts to trusts, in which the Commissioner attempted to tax the donor with ordinary income on the theory that the donor retained an *income interest* in the donee trusts. In most of these cases the analytical focus was upon the applicability of section 677, dealing with the taxation of trust income. *Krause v. Commissioner*, 56 T.C. 1242 (1971), appeal dismissed (nolle pros) (6th Cir. June 27, 1972); *Estate of Sheaffer v. Commissioner*, T.C. Memo. 1966–126; *Estate of Morgan v. Commissioner*, 37 T.C. 981 (1962), affd. 316 F.2d 238 (6th Cir. 1963), cert. denied 375 U.S. 825 (1963); *Estate of Sheaffer v.*

---

[3] Under sec. 2502(d), the basic liability for Federal gift taxes is upon the donor. The donor is also primarily liable for Tennessee State gift taxes. Tenn. Code Ann. sec. 67–2511 (1976).

*Commissioner*, 37 T.C. 99 (1961), affd. 313 F.2d 738 (8th Cir. 1963), cert. denied 375 U.S. 818 (1963); *Estate of Staley v. Commissioner*, 47 B.T.A. 260 (1942), affd. 136 F.2d 368 (5th Cir. 1943), cert. denied 320 U.S. 786 (1943). A succinct chronological review of the evolution of this issue under section 677 in the above-cited cases, all involving gifts to trusts, may be found in *Hirst v. Commissioner*, 63 T.C. 307 (1974), affd.    F.2d    (4th Cir. 1978), our most recent decision in this area of the law.

The first case in which the Commissioner adopted the part-sale, part-gift theory as his principal position[4] was *Turner v. Commissioner*, 49 T.C. 356 (1968), affd. per curiam 410 F.2d 752 (6th Cir. 1969), which involved transfers to individuals and to trusts.[5] In that case, after a thorough review of the earlier cases, we concluded that the part-sale, part-gift theory was inconsistent with the "rationale" of the earlier cases, and that the transfer must be viewed as a "net gift" (i.e., the value of the property transferred less the gift tax), having no income tax consequences (49 T.C. 363). This decision was affirmed by the Sixth Circuit, which in a brief per curiam opinion, stated that this Court had "correctly decided the issues" (410 F.2d 752).

In 1971, we were again faced with this issue in *Krause v. Commissioner, supra,* and *Estate of Davis v. Commissioner,* T.C.

---

[4]The part-sale, part-gift rationale was argued by the *taxpayer* in *Estate of Staley v. Commissioner*, 47 B.T.A. 260 (1942), affd. 136 F.2d 368 (5th Cir. 1943), cert. denied 320 U.S. 786 (1943), in an attempt to avoid being taxed as a beneficiary of the donee trust. The taxpayer contended that the amount received from the trust for the payment of the gift tax was a nontaxable return of capital from "sale" of the transferred property. However, this argument was rejected by the Board of Tax Appeals.

[5]The Commissioner in *Turner v. Commissioner*, 49 T.C. 356, 362–363 (1968), affd. per curiam 410 F.2d 752 (6th Cir. 1969), advanced the part-sale, part-gift theory only in respect of individual recipients and conceded it was not applicable in respect of the trust transfers. The Commissioner's concession was explained as follows:

"In the case at bar, respondent, in his statutory notice, took the position that both the transfers to individual recipients and the transfers in trust were part sale, part gift transfers. On brief, however, respondent has conceded that the transfers in trust were not sales. He distinguishes the two classes of transfers on the basis that the trustees were not personally liable for the tax while the individual transferees personally promised to pay the tax. He concludes that in this latter class of transfers Pamela [the donor] did not retain any interest in the property transferred but accepted instead the personal promises of the recipients. Respondent further argues that such facts operate to distinguish all of the above trust cases [i.e., some of the trust cases cited in the preceding paragraph of the above text]."

The Commissioner's conceptual distinction between individual transferees and trust transferees was abandoned without explanation in the subsequent cases of *Krause v. Commissioner*, 56 T.C. 1242 (1971), appeal dismissed (nolle pros) (6th Cir. 1972) and *Estate of Davis v. Commissioner,* T.C. Memo. 1971–318, affd. per curiam 469 F.2d 694 (5th Cir. 1972), in both of which the Commissioner adopted the part-sale, part-gift rationale as an alternative argument with respect to transfers to trusts. *Davis* involved transfers to both trusts and individuals, and the same argument was advanced as to both types of transfers.

Memo. 1971–318, affd. per curiam 469 F.2d 694 (5th Cir. 1972). In *Krause*, property had been transferred to certain trusts for the benefit of the donor's grandchildren. The transfers were conditioned upon the trusts paying the donor's gift tax, either from trust corpus, trust income, or from borrowed funds. Relying upon *Estate of Sheaffer v. Commissioner*, 37 T.C. 99 (1961), affd. 313 F.2d 738 (8th Cir. 1963), cert. denied 375 U.S. 818 (1963), and *Estate of Staley v. Commissioner, supra*, the Commissioner's principal position was again to treat the payment of the gift tax by the donee as income to the donor under section 677. The focus of our analysis was upon the applicability of section 677 in a situation where the gift taxes were paid from borrowed funds, although trust income could have been used for such purposes. Only as an alternative argument did the Commissioner advance his part-sale, part-gift rationale, and we rejected this alternative position, relying upon, and quoting from, our opinion in *Turner v. Commissioner, supra*.

In *Estate of Davis v. Commissioner, supra*, we again refused to apply the part-sale, part-gift rationale, relying upon *Turner* and *Krause*. The *Davis* decision was affirmed per curiam by the Court of Appeals for the Fifth Circuit (469 F.2d 694).

Our theretofore clear position on this issue, as reflected in *Turner, Krause*, and *Davis*, was refined in *Johnson v. Commissioner*, 59 T.C. 791 (1973), affd. 495 F.2d 1079 (6th Cir. 1974), cert. denied 419 U.S. 1040 (1974), a case involving a significant variation from the factual pattern of the prior cases. In *Johnson* the donor, *prior to his gift* of appreciated securities, borrowed $200,000 from a bank, on a nonrecourse note, using the securities as collateral. He then transferred the securities to a trust for his children, and the trust assumed responsibility for payment of the $200,000 liability. The donor used approximately $150,000 of the borrowed funds to pay the gift taxes on the transfer to the trust and retained the $50,000 balance for his own use.

This Court held that the transaction in *Johnson* was in substance a part-sale, part-gift and that the donor realized taxable gain to the extent that the $200,000 cash received by him exceeded his basis in the securities transferred to the trust. We distinguished *Turner* on the ground that *Turner* involved payment of gift taxes by the donees, whereas in *Johnson*, the donor had received cash, unrestricted as to use, in an amount in

excess of the eventual gift tax liability. Because the donor in *Johnson* had transferred property subject to an existing encumbrance for which he had received cash, our opinion was heavily influenced by *Crane v. Commissioner*, 331 U.S. 1 (1947).

*Johnson* was appealed to the Sixth Circuit, the same court which had earlier affirmed our decision in *Turner*. The Sixth Circuit affirmed our holding in favor of the Commissioner, but in doing so, the court went to some length to reexamine the rationale of *Turner*. The court stated (495 F.2d 1085) that neither in *Turner* nor in the several cases which preceded *Turner* "did the Commissioner strongly argue, nor did the courts carefully consider" the part-sale, part-gift rationale. Moreover, the Sixth Circuit opinion appears to have viewed the issue as having been *conceded* by the Commissioner in *Turner*,[6] and concludes as follows (495 F.2d 1086):

> Thus, the *Turner* case does not support the taxpayers' position. *Turner* has no precedential value beyond its peculiar fact situation, in view of the Commissioner's concessions in that case both in the Tax Court and on appeal to this Court.

Such was the state of the law when we were again called upon to deal with the issue in *Hirst v. Commissioner*, 63 T.C. 307 (1974), affd. F.2d (4th Cir. 1978). In *Hirst*, the donor transferred real estate to her children and grandchildren upon the condition that the donees pay the gift tax, which they did. Applying the part-sale, part-gift rationale, the Commissioner determined that the donor realized a taxable gain measured by the difference between the gift tax paid and her basis in the transferred property. After a thorough chronological review of all of the cases leading up to the *Turner* decision, and the cases which followed, culminating in the Sixth Circuit's *Johnson* opinion, we held in favor of the taxpayer, again following *Turner*. We discussed the Sixth Circuit's opinion in *Johnson*, and the merits of the net gift rationale of *Turner* as follows (63 T.C. at 314–315):

> There can be no doubt upon reading the Circuit Court's opinion, that it did not approve of *Turner*, and that it was critical of the "maze of cases" in this field. Nevertheless, it must be remembered that it was the Sixth Circuit itself which affirmed this Court's decision in *Turner*, and that it did not, in *Johnson*,

---

[6]See n. 5, concerning the Commissioner's concession of the part-sale, part-gift argument with respect to the *trust recipients* in *Turner*.

overrule it. To be sure, the Sixth Circuit concluded that *Turner* did not support the taxpayer's position in *Johnson*—a conclusion with which we agree. And it stated finally that (p. 1086): "*Turner* has no precedential value beyond its peculiar fact situation, in view of the Commissioner's concessions in that case both in the Tax Court and on appeal to this Court." But the Court of Appeals was mistaken in its assumption that the Commissioner's concessions in *Turner* deprived it of any precedential value beyond its own facts. For *Turner* involved gifts both to individuals and to trusts, and the Government's concession was limited only to the transfers in trust. 49 T.C. at 362. No such concession was made as to the three gifts to individuals in that case, and it cannot be distinguished here on that ground. It remains, at least as to the gifts to individuals, as a decision of this Court, affirmed by the Sixth Circuit.

* * * in the absence of any clear-cut overruling of prior law by a Court of Appeals, we are not prepared at this time to reexamine an intricate and consistent pattern of decision that has evolved over the years in this field, notwithstanding that there may be much to be said in favor of a more "realistic" approach to the problem. Things have gone too far by now to wipe the slate clean and start all over again.

Our opinion in *Hirst* was affirmed on January 4, 1978 (*Hirst v. Commissioner*, F.2d (4th Cir. 1978), affg. 63 T.C. 307 (1974)). The Court of Appeals for the Fourth Circuit, sitting en banc, followed the *Turner* case as "the basis" of its decision, "as it was the basis of decision in the Tax Court" ( F.2d at ) and distinguished *Johnson* on the ground that it "involved a pre-transfer draw down of a portion of the appreciated value of the asset transferred, by the donor's borrowing against it immediately prior to its transfer to the donees" ( F.2d at ). The court pointed out that: "While the donor himself actually paid the gift tax, none of the $200,000 he borrowed was committed to payment of the tax" ( F.2d at ). As to the *Hirst* case, the court of appeals said in part ( F.2d at ):

Before the present transaction, Mrs. Hirst owed nothing, and by virtue of the transactions she received nothing. She was not better off after the transfer, with the donee undertaking the burden of the gift tax; she was simply not worse off.

Thus, with the exception of the Sixth Circuit's *Johnson* opinion (which involved a significant factual variation), there is an unbroken line of cases, including appellate decisions in the Fourth (*Hirst*), Fifth (*Estate of Davis*), and Sixth (*Turner*) Circuits, rejecting the Commissioner's part-sale, part-gift rationale as applied to gifts conditional upon the donee's payment of the gift tax. Although the Sixth Circuit's analysis in *Johnson* appears inconsistent in some respects with the net gift rationale

of *Turner* and the other cases, the court did not find it necessary to overrule *Turner* in order to decide *Johnson,* on its particular facts, in favor of the Commissioner. Indeed, the court stated "whether we describe this [transaction] as a 'part sale and part gift' or a 'net gift' has no importance" (495 F.2d at 1083). Instead of overruling *Turner,* the Sixth Circuit chose to limit its "precedential value" to its own factual circumstances.

While this approach may have been intended to relegate *Turner* to a kind of living oblivion, it did not do so as to future cases, such as the instant case, which are indistinguishable in their basic facts. In principle, a transfer to a trust cannot be distinguished from a transfer to an individual. Thus, by deciding *Johnson* on its own facts without specifically overruling *Turner,* the Sixth Circuit's comments on *Turner* must be viewed as dictum, and not the clear position of that Court on the issue presented in the instant case. See *Sirbo Holdings, Inc. v. Commissioner,* 476 F.2d 981, 987–988 (2d Cir. 1973), vacating and remanding 57 T.C. 530 (1972). Moreover, the precedential significance of this dictum is weakened by the fact that the Sixth Circuit based its conclusions about the validity of *Turner* at least in part upon an apparent belief that the Commissioner had conceded the issue in *Turner* (495 F.2d at 1085). As we observed in *Hirst,* 63 T.C. at 314–315, this was a mistaken assumption, as the Commissioner's concession was only a limited one, and he did not abandon his basic position on the part-sale, part-gift issue, which was decided on the merits against him.

When petitioner made the trust gifts here in dispute, she did not intend to sell her stock. Her advisors had before them the *Turner* opinions of this Court and the Court of Appeals for the Sixth Circuit in which both courts rejected the notion that transfers to individuals, conditioned upon the donees' payment of the resulting gift tax, caused the donor to realize taxable income. In both courts, the Commissioner had conceded that the donor did not realize income as a result of the transfers to the *trusts* in that case. Despite that concession in *Turner,* the Commissioner renewed his part-gift, part-sale argument in *Krause v. Commissioner, supra,* which involved trust transfers, and in a Court-reviewed opinion, unanimous on this issue, this Court rejected that argument. The Commissioner appealed the *Krause* case and then allowed the appeal to be dismissed nolle pros. In drafting the trust instruments here involved, petition-

er's counsel adopted, in substance, the relevant language used in the *Krause* case trusts. Subsequently, the Court of Appeals for the Fifth Circuit in *Estate of Davis v. Commissioner*, T.C. Memo. 1971–318, affd. per curiam 469 F.2d 694 (5th Cir. 1972) and the Court of Appeals for the Fourth Circuit, sitting en banc, in *Hirst v. Commissioner, supra*, have affirmed opinions of this Court which followed the *Turner* case.

Despite this overwhelming precedent to the contrary, respondent continues to urge that we change our long-established position on this issue in order to sustain a tax deficiency of over $600,000, determined against a taxpayer who justifiably relied upon that clear precedent in making the gifts which are the subject of this case. In doing so, respondent relies heavily upon the Court of Appeals' decision in *Johnson,* a case which involved a significant factual difference, which affirmed our opinion in those particular factual circumstances, and which did not overrule any of the prior cases upon which petitioner had relied. In these circumstances, under the principle of stare decisis and fair play with a taxpayer who has relied upon our prior opinions, which opinions have been affirmed by higher courts or in respect of which appeals have been dismissed, we must follow the *Turner* case and hold that petitioner did not realize taxable income as a result of the conditional transfers here in dispute. As this Court stated in *Hirst v. Commissioner*, 63 T.C. at 315: "Things have gone too far by now to wipe the slate clean and start all over again."

*Decision will be entered for the petitioners.*